IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TIMOTHY ALLEN, a single man,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT CARTER OLSON, Pinal County Attorney, RENEE OLSON, his wife; JEFFREY W. SANDLER, a deputy Pinal County Attorney, and VICKI G. SANDLER, his wife; PINAL COUNTY, a political subdivision of the State of Arizona,<br><br>Defendant. | No. CIV 01-1769-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before this Court are the following motions: Defendants Pinal County, Jeffrey Sandler, and Vicki Sandler's Motion to Dismiss [Doc. No. 55]; Defendants Robert Carter Olson and Renee Olson's Motion to Dismiss [Doc. No. 56]; Plaintiff's Motion to Not Consider Matters Outside the Pleadings Submitted by Defendants, to Not Convert the Present Motion to Dismiss to Motion for Summary Judgment, or Alternatively to Require Defendants to File Appropriated Statement of Facts with Citations to the Record [Docs. No. 59-1, 59-2, 59-3]; Defendants' Motion to Strike Exhibit B to Plaintiff's Omnibus Response to Defendants' Motion to Dismiss [Doc. No. 62]; Defendants Robert Carter Olson and Renee Olson's Motion for Rule 11 Sanctions [Doc. No. 70]; Plaintiff's Notice of Filing Second

1  Amended Complaint as of Right, or Alternative Motion to Amend First Amended Complaint
2  [Doc. No. 71]; Plaintiff's Cross Motion for Sanctions [Doc. No. 72-1]; Plaintiff's Motion to
3  Compel Discovery, to Enforce Subpoena, to Reschedule Deadlines, and for Sanctions [Docs.
4  No. 76-1, 76-2, 76-3, 76-4]; Plaintiff's Motion to Enforce Subpoena [Docs. No. 83-1, 83-2];
5  Defendants Pinal County and Sandler's Motion for Sanctions [Doc. No. 84]; Plaintiff's Cross
6  Motion for Sanctions [Doc. No. 85]; Plaintiff's Motion for Rule 11 Sanctions Against
7  Defendants and Their Lawyers [Doc. No. 87]; and Defendants Robert Carter Olson and
8  Renee Olson's Motion to Strike Plaintiff's Application for Entry of Default and Judgment by
9  Default [Doc. No. 93]. After reviewing the briefs in this matter and hearing oral arguments
10 on December 15, 2003 at 10:00 a.m., the Court issues the following decision.

## BACKGROUND

12  On May 14, 1999, while traveling from Safford to Phoenix on U.S. 60, Plaintiff lost
13  control of his Chevrolet Cavalier, crossed the center line and collided with a Chevrolet
14  Blazer. All three passengers in the Blazer were killed and Plaintiff suffered serious injuries.
15  The Arizona Department of Public Safety ("DPS") conducted a criminal investigation
16  concerning the collision. At the scene, DPS officers directed EMTs to draw blood from
17  Plaintiff for law enforcement purposes. Once transported to the hospital, further blood
18  samples were drawn and seized by DPS officers without a warrant.
19  DPS Officer Emerson was the lead investigator at the scene. He interviewed
20  witnesses, one of which estimated Plaintiff's speed at 90-100 miles per hour. DPS Officer
21  Derfus initially calculated Plaintiff's speed at 95 miles per hour and submitted a report to
22  Officer Emerson. Plaintiff's speedometer with its needle frozen in position was separated
23  from the vehicle. Although no photographs were taken of the speedometer, a diagram by one
24  DPS officer suggests that the needle was frozen at somewhere between 50 and 60 miles per
25  hour. The posted speed limit at the time of the collision was 65 miles per hour.
26  In June, 1999, DPS Officer Allen informed Officer Emerson that there were problems
27  with the speed calculation and that the calculations were in error. He did not reduce his
28

conclusions to a written report. Officer Allen also disclosed the speed error to his lieutenant, Lt. Roger Vanderpool. Lt. Vanderpool did not instruct Allen to generate a written report.

On August 19, 1999, Defendant Sandler[1] presented the State's case relating to the collision and Plaintiff's involvement to the Grand Jury. At the Grand Jury proceeding, Officer Emerson testified that DPS had determined the speed of Plaintiff's vehicle to have been 95 miles per hour and that Plaintiff's blood contained opiates. Officer Emerson admits that his testimony at the Grand Jury proceeding was false, incomplete and misleading. Plaintiff was indicted on three counts of manslaughter. He appeared voluntarily on September 10, 1999 and entered a plea of not guilty. The court ordered a secured bond of $100,000. Officer Emerson later used the same false, incomplete and misleading statements to obtain a search warrant.

On August 23, 1999, Defendant Sandler was assigned to prosecute the case on behalf of the State and the Pinal County Attorney, Defendant Olson. See State of Arizona v. Timothy William Allen, CR 99-025746. Officer Allen disclosed the speed calculation error to Defendant Sandler sometime between August 8 and August 15, 2000, approximately one year after the grand jury indictment was issued. Defendant Sandler did not disclose the favorable information in a timely manner. Rather, in October 2000, Defendant Sandler informed Defendant Olson that the State's case was weakened due to the speed calculation error, but that there was an alternative theory under which the State was proceeding. On February 12, 2000, Defendant Sandler advised Defendant Olson that the alternative theory was also weakened. That same day, Defendant Sandler filed a Motion to Dismiss the criminal case, and all charges against Plaintiff were dismissed.

Following dismissal of the criminal case, Plaintiff filed suit in the Maricopa County Superior Court. Defendant Pinal County removed the action to this court. Plaintiff

---

[1] The name "Defendant Sandler" represents both Jeffrey and Vicki Sandler. Likewise, "Defendant Olson" represents both Robert Olson and Renee Olson.

subsequently filed an amended complaint in this court on February 7, 2003, alleging[2]: 1) Defendants Sandler and Olson violated Plaintiff's 42 U.S.C. § 1983 rights; 2) Defendant Pinal County committed § 1983 violations by maintaining constitutionally violative policy and acting with deliberate indifference toward Plaintiff; 3) Section 1983 violations for conspiracy by all Defendants to violate Plaintiff's constitutional rights; 4) State conspiracy and abetting claim against Pinal County, Olson and Sandler; 5) State malicious prosecution claim against Pinal County, Olson and Sandler; and 6) False Imprisonment.[3] The State malicious prosecution and false arrest/false imprisonment claims have since been dismissed and will not be addressed. The pending nineteen motions followed.

## I. MOTION TO DISMISS

### STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-56 (1957); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). When deciding a Motion to Dismiss, the complaint is construed in the light most favorable to the plaintiff. Id. The Court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Legal conclusions, however, couched as factual allegations are not given a

---

[2] There was originally a claim for unsafe highway that was dismissed pursuant to a stipulation of the parties.

[3] Plaintiff filed a Notice of Second Amended Complaint as of Right or, Alternatively, Motion to Amend First Amended Complaint on June 5, 2003. The Court does not find reason under Fed. R. Civ. P. 15(a) to grant either alternative Motion. However, in the Motion, Plaintiff states that the parties agreed to dismiss the State claims of Malicious Prosecution, False Arrest, and the Unsafe Highway. Because the Court does not find this agreed dismissal in the record, the Court will grant Plaintiff's Motion to Amend for the sole purpose of dismissing those State claims.

1  presumption of truthfulness. See Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649-
2  50 (9th Cir. 1984).
3      A court may dismiss a claim either because it lacks "a cognizable legal theory" or
4  because it fails to allege sufficient facts to support a cognizable legal claim. SmileCare
5  Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal
6  without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint
7  could not be saved by any amendment." Polich v. Burlington Northern, Inc., 942 F.2d 1467,
8  1472 (9th Cir. 1991). When exercising its discretion to deny leave to amend, "a court must
9  be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather
10 than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir.
11 1981).
12     Defendants' filed Fed. R. Civ. P. 12(b)(6) Motions to Dismiss Plaintiff's First
13 Amended Complaint [Docs. No. 55 and 56] claiming that Defendants Sandler and Olson are
14 entitled to absolute immunity for all claims, Defendant Pinal County is entitled to absolute
15 immunity for Plaintiff's State law claims, and Defendant Pinal County cannot be held liable
16 for Plaintiff's federal claims because its agents–Olson and Sandler–are state actors not county
17 actors for purposes of § 1983 liability. Defendants also allege that all state law claims
18 against Defendants Sandler and Olson must be dismissed because they were not timely filed
19 and because Plaintiff failed to provide them with notice of claim. Finally, Defendants
20 contend that Plaintiff's conspiracy claim must fail based on lack of factual support.
21     1. <u>Absolute Immunity for Defendants Sandler and Olson.</u>
22     To state a section 1983 claim, the plaintiff must allege facts showing a person acting
23 under color of state law deprived the plaintiff of a right secured by the Constitution. Karim-
24 Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir.1988). Neither a State nor
25 its officials acting in their official capacities are "persons" under section 1983. Will v.
26 Michigan Dept. of State Police, 109 S.Ct. 2304, 2312 (1989).

- 5 -

All parties are in agreement that prosecutors are entitled to absolute prosecutorial immunity for acts performed in their role as prosecutor. See Imbler v. Pachtman, 424 U.S. 409, 427, 430-31 (1976) (overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Babcock v. Tyler, 884 F.2d 497, 501 (9th Cir. 1989). Prosecutors are not granted immunity simply as a result of their status as prosecutors. Rather, absolute prosecutorial immunity only protects prosecutors when they are acting pursuant to their official role as an advocate for the state performing "quasi judicial" functions. Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83 (1986). It does not extend to policymaking and investigatory acts or omissions. Id.

"Quasi judicial" activities include activities intimately associated with the judicial process such as initiating and prosecuting a case, and presenting the State's case. The activity is "quasi judicial" even if the prosecutor has knowledge that its case is baseless. See Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir. 1986) (en banc) (citation omitted); State v. Superior Court in and for County of Maricopa, 921 P.2d 697, 701 (Ariz. Ct. App. 1996). Moreover, prosecuting attorneys have been held absolutely immune from liability for malicious prosecution, Yaselli v. Goff, 12 F.2d 396 (2d Cir. 1926), and false imprisonment. Tyler v. Witkowski, 511 F.2d 449, 451 (7th Cir. 1975). Courts have also granted absolute prosecutorial immunity for investigative conduct deemed necessary to making a decision to prosecute, and other such investigative conduct as interviewing witnesses, and failure to investigate and or prosecute. See Imbler, 424 U.S. at 431 n.33; 67 A.L.R. Fed. 640 (1984) (internal citations omitted).

Absolute prosecutorial immunity has been rejected in cases of general investigative activities, activities involving search and seizure, arrest and filing charges, the extradition of a witness defendant, the intimidation or restraint of witnesses, coercing a confession, and in a number of cases involving statements made by prosecutors to the press and the public. 67 A.L.R. Fed 640 (internal citations omitted). See also Buckley v. Fitzsimmons, 509 U.S. 259, 262-63 (1993) (denying absolute immunity to assistant prosecutors who performed police

investigative functions such as fabricating evidence, shopping for an expert who was known to fabricate evidence, and making comments on the evidence to the media). Accordingly, a court must apply a "functional analysis" to determine whether absolute immunity exists: it must examine the nature of the prosecutor's activities. 67 A.L.R. Fed 640 (citations omitted).

The parties agree that Defendants Sandler and Olson were engaging in activities within the scope of their authority but disagree over the nature of their activities. According to Plaintiff, Defendants Sandler and Olson were engaging in policymaking and investigative decisions and are therefore not entitled to absolute immunity. According to Defendants, Sandler and Olson were engaging in quasi judicial activities. Because this is a disputed fact, we must look to the actions alleged in Plaintiff's complaint and, assuming them to be true, determine whether they were performed in a quasi judicial capacity and within the prosecutor's scope of authority.

First, Plaintiff asserts that the decision to prosecute a case is a "policymaking" decision for which the prosecutor may be held liable. However, the Ninth Circuit and Supreme Court have held that "it is *well established* that a prosecutor has absolute immunity for the decision to prosecute." Kalina v. Fletcher, 522 U.S. 118, 125 (1997); Roe v. City and County of San Francisco, 109 F.3d 578, 583 (9th Cir. 1997), citing Burns v. Reed, 500 U.S. 478, 486 (1991). Furthermore, Plaintiff presents no evidence that Defendant Sandler or Olson made decisions based on county, state, or DPS policy. Plaintiff's argument that Defendants Sandler and Olson engaged in policymaking decision when deciding to prosecute Plaintiff fails and absolute immunity applies to that decision.

Plaintiff's allegations against Defendant Sandler include that he 1) Received information in early to mid August that the speed calculation was in error but did not instruct Officer Allen to write a report; 2) conducted the Grand Jury proceeding on behalf of the State and the Pinal County Attorney, Defendant Olson; 3) prosecuted the Plaintiff in Pinal County Superior Court when he knew or should have known that the Plaintiff was not guilty of the

criminal charges; 4) failed to timely disclose favorable evidence discovered during trial that Plaintiff's speed was at or near the posted speed limit at the time of the accident; 5) conspired with Pinal County, Olson and DPS officers to violate Plaintiff's constitutional rights; and 6) used wrongfully obtained Plaintiff's blood and Grand Jury testimony in prosecuting Plaintiff.

Plaintiff's allegations against Defendant Olson include that he is responsible for establishing final governmental policy respecting the prosecution of cases in Pinal County and that he adopted the policy of violating Plaintiff's constitutional rights. See A.R.S. § 11-532. By keeping abreast of the pending action through Sandler, Defendant was on actual or constructive notice that his actions would likely result in a constitutional violation. Defendant Olson is also alleged to have conspired with Pinal County, Sandler and DPS officers to violate Plaintiff's constitutional rights. Alleged acts in furtherance of the conspiracy include, for example, using wrongfully taken Plaintiff's blood in prosecuting Plaintiff, allowing wrongful testimony at the Grand Jury proceeding, and failing to turn over exculpatory evidence.

The recent Ninth Circuit case Broam v. Bogan, 320 F.3d 1023 (9th Cir. 2003) addresses most of Plaintiff's allegations against Defendants Sandler and Olson. In that case the court held that a prosecutor is entitled to absolute immunity for the knowing use of false testimony at trial (citation omitted); and that a prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process but that such a decision is a prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages. Id. at 1030, citing Imbler, 424 U.S. at 431-32 n. 34.

Next, despite Plaintiff's contention to the contrary, prosecutors are entitled to absolute immunity for non investigative activities, including evaluation of evidence assembled by police, conducted in preparation for its presentation before a grand jury after a decision to seek an indictment has been made. Buckley, 509 U.S. at 273. See Milstein v. Cooley, 257

1  F.3d 1004, 1011 (9th Cir. 2001). Prosecutors are immune so long as their activities are

2  conducted in their role as advocate, not as detective. As the court in <u>Milstein</u> explained,

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other."

7  <u>Id.</u> at 1010 (citation omitted). Here, although Plaintiff alleges in his second amended

8  complaint that Defendant Sandler was present at the scene after the accident occurs, there is

9  no evidence that he was performing any investigative function or that he was giving officers

10 advice. Rather, the evidence shows only that he was merely present at the scene at some

11 point during the investigation. Moreover, not only are Defendants Sandler and Olson

12 absolutely immune from liability for Defendant Sandler's presentation to the Grand Jury,

13 Defendant Olson was not even informed of the speed calculation error until approximately

14 one year after the grand jury investigation. Therefore, he cannot be held liable for any of the

15 DPS officers misstatements to the grand jury.

16       The Ninth Circuit has also held that prosecutors are entitled to immunity from

17 conspiracy claims, <u>Ashelman</u>, 793 F.2d at 1078, and that a prosecutor's knowing use of

18 perjured testimony, deliberate withholding of exculpatory information, and failure to make

19 full disclosure of all facts in "initiating and pursuing a criminal prosecution and in presenting

20 the state's case was entitled to absolute prosecutorial immunity." <u>Prince v. Wallace</u>, 568 F.2d

21 1176, 1178-79 (5th Cir.1978) (per curiam).

22       Based upon the above analysis, it is clear that Defendants Sandler and Olson were

23 engaging in quasi judicial rather than policymaking or investigative functions with respect

24 to Plaintiff's § 1983 claims. As such, they are afforded absolute immunity from prosecution

25 under 28 U.S.C. § 1983 and Plaintiff's claims against Defendants Sandler and Olson alleging

26 § 1983 violations for failing to inform Plaintiff of favorable/exculpatory evidence relative

to his innocence. Because Defendants Sandler and Olson are immune from suit, amendment of Plaintiff's complaint with respect to those two Defendants will not be permitted.

2. <u>Absolute Immunity for Defendant Pinal County</u>.

A county government is liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . .." <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978). Section 1983 liability may not be premised solely upon a respondeat superior theory. Rather, only deprivations undertaken pursuant to governmental "custom" or "policy" may lead to the imposition of governmental liability. "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'--that is, acts which the municipality has officially sanctioned or ordered." <u>Pembaur</u>, 475 U.S. at 480.

Municipal liability may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question. If the person has the final policymaking authority on an issue then their acts of deliberate indifference can be attributed to the county so as to establish municipal liability. See <u>Id.</u>, at 483-84. Whether an official has final policymaking authority is a matter of state law. <u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701 (1989).

In this case, Plaintiffs have not provided evidence that Defendants Sandler and Olson were acting pursuant to policy or custom. It is true that, in Arizona, the duties of a county prosecutor include the duty and discretion to conduct prosecutions for public offenses rests with the county attorney. A.R.S. § 11-532; <u>State v. Williams</u>, 587 P.2d 1177, 1180 (Ariz. 1978). That, however, is a statutorily defined duty, not a policy. There is no indication that Defendants Sandler and Olson made the decision to prosecute Plaintiff based on a policy of prosecuting without probable cause, or without disclosing exculpatory evidence. That was a decision made by Defendants Sandler and Olson for which Pinal County had no involvement–by policy, custom or otherwise. As such, Pinal County is immune from § 1983 liability for the actions of Defendants Sandler and Olson.

Finally, Defendant Pinal County cannot be held liable for the state law claim of conspiracy. To begin, despite Plaintiff's argument to the contrary, his conspiracy claim is not well defined. He merely makes a conclusory allegation that Defendants conspired with each other and with DPS Officers but fails to provide specific evidence of an agreement to violate Plaintiff's constitutional rights. Second, absent a policy or custom of conspiring to violate the Constitutional rights of parties in criminal proceedings, Defendant Pinal County cannot be held liable for conspiracy based on the actions of Defendants Sandler and Olson. There has been presented no such evidence. Therefore, Plaintiff's conspiracy claim is dismissed because it lacks a legal or factual basis.

## II. MOTIONS FOR SANCTIONS

### STANDARD OF REVIEW

Under Rule 11, Fed. R. Civ. P., a Court may order sanctions for violating any of the provisions of Rule 11. Fed. R. Civ. P. 11(c)(2). Rule 11 imposes a number of obligations on parties and their counsel, including the duty to assert only those legal positions that "are warranted by existing law or by a nonfrivolous argument" for an extension or change in the law, and only those factual positions that "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The decision to impose sanctions is a matter committed to the discretion of the trial court and will be reviewed only for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990).

A motion for sanctions under Rule 11 "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [the rule]. . . [It] shall not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A). That subsection of Rule is called the "safe harbor" provision.

Based on the safe harbor provision of Rule 11, Defendant's Motion for Sanctions [Doc. No. 70] and Plaintiff's Cross-Motion for Sanctions [Doc. No. 72] must be denied. Neither Defendant Olson, nor Plaintiff provide evidence that their respective Motions for Sanctions were served on the opposing party 21-days before filing the Motion with the Court. Defendant Olson discusses letters sent to Plaintiff's counsel demanding his client's dismissal from the lawsuit, but this does not suffice for purposes of sending *the motion* to Plaintiff.

Ironically, although he failed to comply with the safe harbor provision, Defendant Olson argues that Plaintiff's Cross-Motion for Sanctions should be denied for failure to comply with the safe harbor provision of Rule 11. And, in his reply, Plaintiff points out that while important, the safe harbor provision is merely procedural and an argument to deny a Motion for Sanctions based on the safe harbor provision "misses the mark." Actually, Plaintiff's argument misses the mark. This Court and the Ninth Circuit have clearly held that Rule 11's safe harbor requirements are *mandatory*, and it would be an abuse of discretion for the Court to excuse or waive them. Heary Bros. Lightning Protection Co., Inc. v. Lightning Protection Institute, 2003 WL 22499612 at *38 (D. Ariz. 2003), citing Radcliffe v. Rainbow Construction Co., 254 F.3d 772, 789 (9th Cir.2001); Barber v. Miller, 146 F.3d 707, 710-11 (9th Cir.1998).

Defendants Pinal County and Sandler's Motion for Sanctions [Doc. No. 84] fulfills the safe harbor provision but does not meet the procedural requirement of filing the Motion separate from other motions and requests. Defendant's Pinal County and Sandler filed a "Supplemental Joinder in Olson's Response to Plaintiff's Notice of Filing Second Amended Complaint as of Right or Alternatively, Motion to Amend First Amended Complaint" in the same pleading as its Motion for Sanctions. Therefore the Motion will be denied for failure to comply with the requirements of Rule 11. Even absent this procedural failure, the motion would be denied as moot. Defendants Pinal County and Sandler seek sanctions for Plaintiff's filing of a Proposed Second Amended Complaint. Because the Court is denying Plaintiff's

1  request to file the Proposed Second Amended Complaint, Defendant Pinal County and
2  Sandler's Motion for Sanctions would be denied as moot.

3  Similarly, Plaintiff's Motion for Sanctions [Doc. No. 76] filed in the same pleading
4  as his Motion to Compel Discovery, to Enforce Subpoena Duces Tecum and to
5  Reschedule/Continue Deadlines, will be denied for procedural failures. Plaintiff's Cross-
6  Motion for Sanctions against Defendants Pinal County and Sandler [Doc. No. 85] is denied
7  for failure to comply with the safe harbor provision in Rule 11.

8  Plaintiff also filed a separate Motion for Sanctions Against Defendants and their
9  Lawyers [Doc. No. 87] on August 4, 2003. Plaintiff complied with the Rule 11 safe harbor
10 provision with respect to separate Motion for Sanctions [Doc. No. 87]. Nevertheless, the
11 Motions will be denied. Plaintiff argues that a Rule 11 Motion based on the opposing
12 attorney's alleged failure to "reasonably investigate" is *ipso facto* bad faith. Therefore,
13 according to Plaintiff, Defendants' Motions for Sanctions were filed in bad faith and are
14 themselves the basis for Rule 11 sanctions. Plaintiff provided no support for this theory and
15 the Court finds no evidence of bad faith on any Defendant's part. Therefore, Plaintiff's
16 Motion for Sanctions is denied.

17 Finally, the Court notes that in each of the separate Motions for Sanctions, the parties
18 presented many of the same arguments as were presented in the various other Motions filed
19 with the Court. As a reminder to the parties and attorneys in this action, the Advisory
20 Committee Notes to the 1993 Amendments to Rule are clear that filing of Motions for Rule
21 11 Sanctions as a means of re-argument and re-litigation of the merits of a lawsuit is not a
22 proper use of Rule 11.

23 For the foregoing reasons,

24 **IT IS ORDERED** that Defendants Pinal County, Jeffrey Sandler, and Vicki Sandler's
25 Motion to Dismiss [Doc. No. 55] is <u>GRANTED</u>, thus terminating this case as to Defendants
26 Pinal County and Defendants Jeffrey and Vicki Sandler.

1  **IT IS FURTHER ORDERED** that Defendants Robert Carter Olson and Renee Olson's Motion to Dismiss [Doc. No. 56] is <u>GRANTED</u>, thus terminating this case as to Defendants Robert Carter Olson and Renee Olson.

4  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Not Consider Matters Outside the Pleadings Submitted by Defendants [Doc. No. 59-1] is <u>DENIED</u>; Plaintiff's Motion Not to Convert the Present Motion to Dismiss to Motion for Summary Judgment [Doc. No. 59-2] is <u>DENIED</u>; and Plaintiff's Alternative Motion to Require Defendants to File Appropriate Statement of Facts with Citations to the Record [Doc. No. 59-3] is <u>DENIED</u>.

9  **IT IS FURTHER ORDERED** that Defendants' Motion to Strike Exhibit B to Plaintiff's Omnibus Response to Defendants' Motion to Dismiss [Doc. No. 62] is <u>DENIED</u>.

11  **IT IS FURTHER ORDERED** that Defendants Robert Carter Olson and Renee Olson's Motion for Rule 11 Sanctions [Doc. No. 70] is <u>DENIED</u>.

13  **IT IS FURTHER ORDERED** that Plaintiff's Notice of Filing of Second Amended Complaint as of Right or Alternatively, Motion to Amend First Amended Complaint [Doc. No. 71] is <u>GRANTED</u> for the sole purpose of dismissing Plaintiff's state law claims of malicious prosecution and false arrest/imprisonment.

17  **IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Sanctions [Doc. No. 72-1] is <u>DENIED</u>.

19  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery [Doc. No. 76-1] is <u>DENIED</u>; to Plaintiff's Motion to Enforce Subpoena Duces Tecum [Doc. No. 76-2] is <u>DENIED</u>; and to Plaintiff's Motion to Reschedule Deadlines [Doc. No. 76-3] is <u>DENIED</u> as Moot.

23  **IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions against Defendants and their attorneys [Doc. No. 76-4] is <u>DENIED</u>.

///
///

1  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Enforce Subpoena [Doc. No. 83-1] is <u>DENIED</u> as Moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions against Defendants [Doc. No. 83-2] is <u>DENIED</u>.

**IT IS FURTHER ORDERED** that Defendants Sandler and Pinal County's Motion for Monetary Sanctions against Plaintiff and Counsel [Doc. No. 84] is <u>DENIED</u>.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Sanctions against Defendants and their Attorney [Doc. No. 85] is <u>DENIED</u>.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Rule 11 Sanctions Against Defendants and Their Lawyers [Doc. No. 87] is <u>DENIED</u>.

**IT IS FURTHER ORDERED** that Defendants Robert Carter Olson and Renee Olson's Motion to Strike Plaintiff's Application for Entry of Default and Judgment by Default [Doc. No. 93] is <u>DENIED</u> as Moot.

DATED this **31** day of December, 2003.

_[signature]_
Stephen M. McNamee
Chief United States District Judge